```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
                                        :
MICHAEL ADAMS,                          :
                                        :         15cv6741 (DLC)
                    Plaintiff,          :
                                        :         OPINION AND ORDER
         -v-                            :
                                        :
CITY OF NEW YORK, POLICE OFFICER        :
CASTILLO, JOHN DOE #1-3,                :
                                        :
                    Defendants.         :
----------------------------------------X
```

APPEARANCES:

For the plaintiff:
Nicholas Mindicino
Stoll, Glickman & Bellina, LLP
475 Atlantic Ave., 3rd Floor
Brooklyn, NY 11217

For the defendants:
Michael K. Gertzer
Corporation Counsel of the City of New York
100 Church Street
New York, NY 10007

DENISE COTE, District Judge:

This case arises from the arrest and detention of Michael Adams ("Adams"). The defendants are the City of New York ("City") and individual police officers of the New York Police Department ("NYPD"), including Officer Jason Castillo ("Castillo"). The defendants have moved to dismiss the complaint in its entirety under Rule 12(b)(6) and 12(c), Fed. R.

1

Civ. P.  For the reasons that follow, only the plaintiff's Monell claim against the City is dismissed.

### Background

These facts are taken from the complaint.  Adams has authored a book on the architectural history of Harlem and engaged in efforts to preserve the Renaissance Ballroom and Casino ("Renaissance"), which was located on 7th Avenue between 137th and 138th Street in Harlem.  On November 16, 2014, Adams went to the Renaissance to protest its planned demolition.  His protest began at approximately 10:25 a.m., and three other people protested along with Adams.  Adams's protest largely consisted of him chanting "Save Harlem Now" on the public sidewalk.  Adams alleges that he was not creating unreasonable noise, blocking pedestrian traffic, or preventing access to any of the buildings located in the area.

Police officers approached Adams shortly before 11:00 a.m.  The police officers told Adams that they were responding to a complaint about his protest.  Adams replied that he was exercising his constitutionally protected rights and would not stop protesting; he refused to leave the area.  The officers placed Adams under arrest and detained him at the precinct until approximately 1:00 p.m.  Adams was issued two summonses for disorderly conduct and released.  The charges against him were later dismissed.

Adams brings four causes of action under 42 U.S.C. § 1983 based on these events: (1) false arrest; (2) malicious prosecution; (3) violations of his First Amendment rights; and (4) municipal liability for all of these constitutional violations under <u>Monell</u>.  He also brings what appears to be a state law claim for false arrest and contends that the City is liable for that claim under a theory of <u>respondeat superior</u>.

The complaint was filed on August 25, 2015.  The case was referred to the § 1983 plan under Local Rule 83.10.  Mediation has not yet taken place.  The defendants filed a motion to dismiss on December 14.  The plaintiff was given an opportunity to amend his complaint or oppose that motion.  He elected to file an opposition, and the motion to dismiss became fully submitted on January 18.

## <u>Discussion</u>

When deciding a motion to dismiss under Rule 12(b), Fed. R. Civ. P., a court must "accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor."  <u>LaFaro v. New York Cardiothoracic Group, PLLC</u>, 570 F.3d 471, 475 (2d Cir. 2009).  "To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts which, taken as true, state a plausible claim for relief."  <u>Keiler v. Harlequin Enters. Ltd.</u>, 751 F.3d 64, 68 (2d Cir. 2014); <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) ("[A] complaint must contain

sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Parkcentral Global Hub Ltd. v. Porsche Auto. Holdings SE, 763 F.3d 198, 208 (2d Cir. 2014) (citation omitted). The standard of review is the same for a 12(c) motion. Mantena v. Johnson, 809 F.3d 721, 727 (2d Cir. 2015).

Section 1983 provides a cause of action for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." Vicarious liability is not applicable to § 1983 suits. Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015). Thus, "to impose liability on a municipality under § 1983, a plaintiff must identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Newton v. City of New York, 779 F.3d 140, 152 (2d Cir. 2015) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)).

**I.   False Arrest**

A false arrest claim requires a plaintiff to prove "(1) the defendant intended to confine the plaintiff, (2) the plaintiff

4

was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Liranzo v. United States, 690 F.3d 78, 95 (2d Cir. 2012) (citation omitted).  The requirements are the same under New York state law.  Simpson v. City of New York, 793 F.3d 259, 265 (2d Cir. 2015).  "To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity." Id.  An officer "has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Garcia v. Does, 779 F.3d 84, 92 (2d Cir. 2015) (citation omitted).  "Probable cause is determined on the basis of facts known to the arresting officer at the time of the arrest." Shamir v. City of New York, 804 F.3d 553, 557 (2d Cir. 2015) (citation omitted).

The defendants have asserted that they are entitled to qualified immunity on the plaintiff's false arrest claim. "Qualified immunity protects public officials performing discretionary functions from personal liability in a civil suit for damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known." Morse v. Fusto, 804 F.3d 538, 546 (2d Cir. 2015) (citation omitted).  Qualified immunity "balances two important interests -- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability" when they act reasonably.  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (per curiam).

"Whether qualified immunity applies turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken."  Morse, 804 F.3d at 546 (citation omitted).  A right is "clearly established if it would be clear to a reasonable public official that his conduct was unlawful in the situation he confronted."  Id. (citation omitted).  An officer "is entitled to qualified immunity against a suit for false arrest if he can establish that he had arguable probable cause to arrest the plaintiff."  Garcia, 779 F.3d at 92 (citation omitted).  "Arguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."  Id. (citation omitted).  Courts "look to the information possessed by the officer at the time of arrest" when determining whether an

6

officer's conduct was objectively reasonable.  Id. (citation omitted).

The plaintiff's false arrest claim thus turns on whether there was probable cause to arrest him for disorderly conduct. The defendants' brief identifies NYPL § 240.20(6) as the only subsection relevant to Adams's case.[1]  Section 240.20 provides that: "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: . . . (6) He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse."  The offense of disorderly conduct therefore has three elements: "(i) the defendant's conduct must be 'public' in nature, (ii) it must be done with 'intent to cause public inconvenience, annoyance or alarm' or with recklessness as to 'a risk thereof,' and (iii) it must match at least one of the descriptions set forth in the statute."  Provost v. City of Newburgh, 262 F.3d 146, 157 (2d Cir. 2001).

"The significance of the public harm element in disorderly conduct cases cannot be overstated."  People v. Baker, 20 N.Y.3d 354, 360 (2013); People v. Johnson, 22 N.Y.3d 1162, 1164 (2014)

---

[1] The probable cause defense to a false arrest claim requires only that there was probable cause for an arrest; it does not require that the officer had probable cause to arrest for the specific offense charged.  Marcavage v. City of New York, 689 F.3d 98, 109-10 (2d Cir. 2012).

7

("We have made clear that evidence of actual or threatened public harm . . . is a necessary element of a valid disorderly conduct charge."). In determining whether the arrestee possessed the requisite intent, therefore, courts consider "many factors, including the time and place of the episode under scrutiny; the nature and character of the conduct; the number of other people in the vicinity; whether they are drawn to the disturbance and, if so, the nature and number of those attracted; and any other relevant circumstances." Baker, 20 N.Y.3d at 360 (citation omitted). Ultimately, "a person may be guilty of disorderly conduct only when the situation extends . . . to a point where it becomes a potential or immediate public problem." People v. Weaver, 16 N.Y.3d 123, 128 (2011) (citation omitted).

Section 240.20(6) requires that, in addition to the requisite intent, an arrestee must refuse to comply with a lawful dispersal order. It is axiomatic that the "First Amendment protects political demonstrations and protests." Papineau v. Parmley, 465 F.3d 46, 56 (2d Cir. 2006). The Supreme Court "has repeatedly held that police may not interfere with orderly, nonviolent protests merely because . . . they simply fear possible disorder." Id. (collecting cases); see Cox v. State of La., 379 U.S. 536, 551-52 (1965). But, "First Amendment protections, while broad, are not absolute."

Papineau, 465 F.3d at 56.  "[G]overnment officials may stop or disperse public demonstrations or protests where clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears."  Id. at 56-57 (citation omitted).

    The defendants' motion to dismiss the false arrest claim is denied.  Assessing whether there was probable cause or arguable probable cause to arrest Adams requires factual development.  Nothing in the complaint suggests that the four protesters intended to cause public harm in protesting on the sidewalk or that this protest presented an immediate threat to public safety or order.

    The defendants' arguments to the contrary are unavailing.  The defendants primarily contend that failing to comply with a dispersal order automatically supports a finding of probable cause to arrest under § 240.20(6), citing People v. Galpern, 259 N.Y. 279, 284-85 (1932) (finding that a dispersal order is lawful unless "circumstances show conclusively that the police officer's direction was purely arbitrary and was not calculated in any way to promote the public order").  Whether Galpern remains good law is an open question.  Supreme Court cases and more recent Second Circuit precedent indicate that police officers' power to interfere with peaceful and orderly protests is more limited than Galpern's interpretation of the disorderly

conduct statute implies. Thus, the defendants have failed to show that the facts in the complaint, if true, do not contain plausible grounds for relief.

## II. Malicious Prosecution

"To establish a malicious prosecution claim . . . a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Stampf v. Long Island R. Co., 761 F.3d 192, 198 (2d Cir. 2014) (citation omitted). "[T]o be actionable under [§] 1983 there must be a post-arraignment seizure, the claim being grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures." Swartz v. Insogna, 704 F.3d 105, 112 (2d Cir. 2013). In other words, "a post-arraignment defendant who is obligated to appear in court in connection with criminal charges . . . suffers a Fourth Amendment deprivation of liberty." Id. (citation omitted).

"[T]he existence of probable cause is a complete defense to a claim of malicious prosecution." Stansbury v. Wertman, 721 F.3d 84, 94-95 (2d Cir. 2013) (citation omitted). "The probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." Id. at 95. "Probable cause, in the context of malicious prosecution, has

. . . been described as such facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." Id. (citation omitted).

The defendants' only argument for dismissal of the malicious prosecution claim is that there was probable cause to arrest and prosecute Adams. The defendants' motion to dismiss this claim is therefore denied.

### III. First Amendment Violation

The plaintiff described his First Amendment claim as one for retaliation. In order to succeed on a retaliation claim, a private citizen must show: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." Dorsett v. Cty. of Nassau, 732 F.3d 157, 160 (2d Cir. 2013) (citation omitted). "[C]hilled speech is not the sine qua non of a First Amendment claim," and "a plaintiff has standing if he can show either that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." Mangino v. Inc. Vill. of Patchogue, 808 F.3d 951, 956 (2d Cir. 2015) (citation omitted).

The defendants' motion to dismiss Adams's First Amendment claim is denied. The defendants' argument in favor of dismissal is again premised on the lawfulness of Adams's arrest. As

11

discussed above, Adams has a plausible claim that his arrest was not supported by probable cause or arguable probable cause.

### IV. Monell Liability

The defendants' motion to dismiss the plaintiff's Monell claim is granted. Adams has not pled sufficient facts to make his Monell claim plausible. His complaint contains nothing aside from the "general and conclusory allegation that there was [an unconstitutional] policy." Littlejohn, 795 F.3d at 315.

### Conclusion

The defendants' December 14 motion to dismiss is granted in part. The claims against the City of New York are dismissed. The motion to dismiss is denied with respect to the remaining claims against the individual defendants.

Dated:    New York, New York
          March 22, 2016

                                    _____
                                         DENISE COTE
                                    United States District Judge